1        IN THE UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ALABAMA
2              SOUTHERN DIVISION

3    UNITED STATES OF AMERICA,    |    CASE NO. 2:22-CR-47-RDP
                                  |
4              Plaintiff,         |
                                  |
5    v.                           |
                                  |
6    ANTUAN CORNELL RIGGS,        |
                                  |
7              Defendant.         |
     _____  |
8    UNITED STATES OF AMERICA,    |    CASE NO. 2:18-cr-99-RDP
                                  |
9              Plaintiff,         |
                                  |
10   v.                           |
                                  |
11   ANTUAN CORNELL RIGGS,        |
                                  |
12             Defendant.         |

13              *  *  *  *  *  *  *  *  *

14     **TRANSCRIPT OF SENTENCING AND REVOCATION HEARING**

15   FOR THE PLAINTIFFS:    Brad Felton
                            U.S. ATTORNEY'S OFFICE
16                          1801 Fourth Avenue North
                            Birmingham, AL 35203
17
     FOR THE DEFENDANTS:    Daniel J. Fortune
18                          BRADLEY, ARANT, BOULT & CUMMINGS, LLP
                            1819 Fifth Avenue North
19                          Birmingham, AL 35203-2119

20        BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES

21   DISTRICT JUDGE, at Birmingham, Alabama, on Tuesday, October 25,

22   2022, commencing at 9:18 a.m.

23

24   The proceedings were reported by a stenographic court reporter.

25   The transcript was produced using computer-aided transcription.

1          (Proceedings commenced at 9:18 a.m. in open court:)

2          THE COURT:  We're here in United States versus Riggs

3    in two different cases, 18-cr-99 and also in 22-cr-47.  The

4    latter is a case pending before the Court; the former is a

5    petition to revoke supervised release in a case previously

6    before the Court.  My understanding is counsel have consulted

7    and agreed that we can proceed on both cases and the

8    sentencing hearing.

9          Is that correct, Mr. Felton?

10          MR. FELTON:  Yes, Your Honor.

11          THE COURT:  Mr. Fortune?

12          MR. FORTUNE:  Yes, Your Honor.

13          THE COURT:  All right.  Mr. Fortune, have you and your

14    client had 35 days in which to review the presentence

15    investigation report?

16          MR. FORTUNE:  Yes, Your Honor.

17          THE COURT:  Mr. Riggs, have you read and discussed the

18    presentence report with your attorney, Mr. Fortune?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And I'm talking about the presentence

21    report in 22-cr-47.  That's the case that you're indicted on;

22    correct?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  And you pled guilty previously.

25          Any objections to any content of the report, Mr.

1    Fortune?

2         MR. FORTUNE:  No, Your Honor.

3         THE COURT:  All right.  Very well.  In compliance with

4    Supreme Court authority, the Court, while not bound to apply

5    the guidelines, has consulted them, taken them into account on

6    the issue of appropriate range of sentence to be imposed in

7    this case.  In that regard, I note that in his plea agreement,

8    Mr. Riggs admitted certain facts that bear upon the

9    computation of his offense level and guideline range and also

10   admitted certain facts and waived his right for a jury to

11   determine those facts.

12        There being no objections, the Court adopts the

13   factual statements contained in the presentence report and I

14   make the following findings in 22-cr-47.  The offense level is

15   21.  The criminal history category is III.  The advisory

16   guideline imprisonment range is 46 to 57 months as to Counts 1

17   and 2.  There's a mandatory consecutive sentence of 60 months

18   as to Count 3.

19        My understanding is the Government at this point is

20   going to move to dismiss Count 4; is that correct?

21        MR. FELTON:  We do, Your Honor.  We move to dismiss

22   Count 4.

23        THE COURT:  All right.  Subject to completing the

24   sentencing hearing today, I'm going to grant that motion and

25   dismiss Count 4.  The supervised release period is one to

1  three years as to Counts 1 and 3, three years as to Count 2,

2  and two to five years as to Count 3.  The fine range is 20,000

3  to 1 million, and restitution is not an issue in the case.

4         Any questions about the Court's guideline findings?

5         MR. FELTON:  No, Your Honor.

6         THE COURT:  All right.  Very well.  All right.  I'd be

7  glad to hear, Mr. Fortune, from you on anything you'd like to

8  say in mitigation or otherwise before I pronounce sentence.

9         MR. FORTUNE:  Your Honor, we ask that the Court

10  sentence towards the low end of the guideline range,

11  specifically a sentence of 106 months total.  Specifically,

12  46 months for Counts 1 and 2, followed by the statutory

13  minimum term of 60 months for Count 3 is a reasonable sentence

14  when the Court considers all of the 3553 factors, Your Honor.

15         I would like to call to the Court's attention,

16  specifically in regards to paragraphs 31 and 32 of the

17  presentence report, where my client received a four-point

18  increase in the advisory guideline range as a result of

19  allegations as far as for Count 4 in regards to a Glock

20  9-millimeter that was -- and that was the Count 4 with the

21  offense date of February 1, 2022.  That Count 4 is being

22  dismissed, Your Honor, and my client could have, you know,

23  raised a big fuss about that.  And again, you also have the

24  revocation.  My client could have fought the revocation, could

25  have, you know, challenged that as well, but he's agreeing to

1  -- he did not challenge that four-point enhancement.  He's not

2  challenging -- he's willing to admit on the revocation, is

3  wanting to go forward, is wanting to serve his time, is

4  wanting to get back to his family as quick as possible, Your

5  Honor.  He also -- his dad is currently suffering -- it is my

6  understanding it is Stage IV cancer.  It's really serious.  He

7  really would like to get home to see his dad.

8  He has been in custody for a long time and he's now in

9  custody in Walker County jail.  That environment has been

10  really unhealthy, really dangerous for him, including living

11  in really unsafe conditions, where he's indicated that there's

12  been, you know, the toilets overflowing, feces on the floor.

13  There's other -- a couple of other inmates who, I guess,

14  intentionally overflowed their toilets, and that was on the

15  floor for, you know, close to two days, Your Honor.

16  He's also not been able to get all of the medical

17  treatment that he needs.  He's currently suffering from some

18  pain.  He has blood in his bowel movements.  When he urinates,

19  he's concerned that he's got something going on with his

20  pancreas.  He really would like the Court to -- and he's --

21  understands that, you know, he's looking at a substantial time

22  in prison and then when he gets out he's going to be on a term

23  of supervised release for, you know, probably at least three

24  years.  We would ask the Court to impose a three-year term of

25  supervised release.

1    What's clear from the presentence investigation

2    report, Your Honor, is my client has a substantial drug

3    problem, and we'd ask that he -- the Court allow him to serve

4    his sentence at Talladega and that he be able to take

5    advantage of the RDAP program so that he can get the treatment

6    and therapy that he needs so that when he is out and he is on

7    supervised release he can take advantage of additional

8    treatment and additional therapy and additional supervision by

9    the federal probation office, Your Honor.

10    Given his current medical history and the fact that he

11    knows and is prepared and is willing to end this here in

12    court, taking full responsibility for his conduct and has not

13    been trying to, you know, dispute any of this, Your Honor, he

14    does humbly ask that the Court consider granting him a bond

15    that allows him to go get the medical treatment that he needs

16    and allows him to self-report to a BOP facility, because at

17    the BOP facility the -- you know, it will be a safer

18    environment, a cleaner environment.  They will also be able --

19    Talladega would not be able to provide better healthcare,

20    allow him to take the meds that he needs, allow him to get his

21    pancreas checked the way he wants to, Your Honor.

22    That bond could include 24/7 electronic GPS tracking.

23    He could live with his mom.  She is here in court today.

24    She's willing to serve as a third-party custodian.  The Court

25    is aware of our previous motions and arguments as to that.  I

1    would adopt those prior arguments as well, Your Honor.

2         If I may have one moment, Your Honor.

3         THE COURT:  You may.

4         All right.  So I'm going to recommend that your client

5    be placed in the state of Alabama as close to home as

6    possible, that he be evaluated for an appropriate drug

7    treatment program, including RDAP, as to which he may be

8    eligible, and that BOP evaluate his medical needs promptly to

9    determine what exactly is going on.  But I don't think he's a

10   candidate for bond at this point.  I'm --

11        MR. FORTUNE:  Your Honor, my client would like to

12   address the Court.

13        THE COURT:  I'm going to -- I'm just answering your

14   points, and I want to hear from Mr. Riggs.  I am going to -- I

15   think I need to ask the probation office to correct paragraphs

16   53 and 54 of the PSR and correct the date there.

17        PROBATION OFFICER GRAHAM:  Yeah.  So the arrest date

18   should be a 2017 date and not 2016.

19        THE COURT:  Correct.

20        PROBATION OFFICER GRAHAM:  And then the bond date is

21   2017.

22        THE COURT:  Correct.  Let's make those changes.

23        All right.  Mr. Riggs, sorry.  I wanted to take care

24   of that housekeeping before I heard from you, but I'm glad to

25   hear from you at this point.

1    THE DEFENDANT:  How are you doing, Your Honor?

2    THE COURT:  I'm well.

3    THE DEFENDANT:  Like, as far as my medical, I haven't

4  been able to get the treatment like I -- I fully understand

5  and accept fully responsibility for my actions and what I have

6  done.  And I'm not a flight risk.  I don't have no problems

7  with turning myself.  I never been -- I never had to be

8  busted.  I just want to take care of my medical, because I

9  have serious medical problems and I have a history of prostate

10 cancer that run in my family.

11    And I'm also not a bad person.  I'm a giving, caring,

12 loving person.  I lead football teams, go to church, feed the

13 homeless.  And I'm just asking you, Judge, for you not to see

14 the bad and not to see my past.

15    THE COURT:  No, I totally understand that.  So just so

16 you'll understand the bond question, when you are adjudicated

17 guilty of a crime, particularly these crimes that are involved

18 here, the burden shifts where you'd have to show a number of

19 things that I don't think you can show here.  Being a flight

20 risk, being a danger to the community is just one of the --

21 two of the questions.  The other one is, is there some reason

22 to believe your conviction could get overturned on appeal.

23    THE DEFENDANT:  No, sir.

24    THE COURT:  Yeah.  So that's one of the things I'd

25 have to make -- to get you -- to let you out on bond, I'd have

1   to make a finding that a substantial question for the Court of

2   Appeals to answer that could get your adjudication appeal

3   reversed.  I'm trying to put this in lay terms.  But that's

4   just a finding I can't make.

5          But what I do want to do is flag your case for BOP to

6   do a quick -- as quickly as possible get a medical examination

7   so they can get an idea of what's going on.  And I am going to

8   recommend you for the drug treatment program, including RDAP,

9   if you're eligible for that.  That's a BOP call, obviously.

10  And it's a BOP call in terms of where you're placed, but I'm

11  going to recommend that be in the state of Alabama, as close

12  to home as possible, which equals Talladega; okay?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Anything else you'd like to say?

15          THE DEFENDANT:  Yes.  I been going through -- like,

16  they try to treat me where I'm at but they really don't have

17  the stuff to treat me.  So, like, far as my stomach, all they

18  do is a x-ray.  It don't show nothing like --

19          THE COURT:  Right.  So what we need to do is get you

20  out of pretrial custody -- you've been in pretrial custody.

21  I'm going to ask the marshal service to see if they can

22  expedite your move into BOP custody so you can get a medical

23  evaluation from BOP; okay?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  All right.  Thank you, Mr. Riggs.

1          Be glad to hear from the Government.

2          MR. FELTON:  Your Honor, just -- our position is that

3    he should be sentenced to the midlevel of the guideline range,

4    specifically because he was on supervised release with this

5    Court at the time of these offenses, and, you know, also has

6    the pending attempted murder case in state court going on.

7    He'll have to deal with that.  We would ask you not to run

8    this case consecutive with any case that may be imposed a

9    sentence later --

10          THE COURT:  What I'm going to do there is say I'm

11   going to leave it to the state court to determine whether my

12   sentence should run concurrent, consecutive, or partially

13   concurrent/consecutive to any yet-to-be-determined sentence --

14   any yet-to-be-imposed sentence.

15          MR. FELTON:  Very well, Your Honor.

16          Mr. Fortune, do you understand what I'm saying there?

17   I don't have enough information to know if this case should

18   run current or consecutive.  And I think the second judge

19   coming along on any yet-to-be-imposed sentence would be in a

20   better position to make that judgment.

21          MR. FORTUNE:  I understand that, Your Honor.  We

22   obviously would ask the Court to enter an order to make it run

23   concurrent to any yet-to-be-imposed sentence because -- and I

24   understand, Your Honor, but I think the Court has enough

25   information to know that -- what the federal cases involve and

1    that they should be run concurrent.  Obviously, if he receives

2    a conviction for those allegations, that's going to be a

3    substantial sentence on the state side, and so I would ask

4    that the Court use that.  But I understand the Court's

5    position.

6         THE COURT:  Well, I think it's best to let the state

7    court judge make that determination because that sentencing

8    judge -- and again, we don't even know if there will be a

9    sentence.  It's yet to be imposed.  But that judge will have

10   all the information.  I only have partial information at this

11   point to make that judgment; okay?

12        All right.  Anything else, Mr. Felton, on this case?

13        MR. FELTON:  No, Your Honor.

14        THE COURT:  All right.  Any response to that, Mr.

15   Fortune?

16        MR. FORTUNE:  Your Honor, I obviously, you know -- to

17   me, a difference of four months, where it matters most is

18   with, you know, Mr. Riggs, and so I would ask the Court to

19   impose at the low end.

20        THE COURT:  All right.  I'm going -- Mr. Riggs, I'll

21   ask you to stand in this case, in 22-cr-47.  I'm going to

22   impose a 48-month sentence as to Counts 1 and 2, plus a

23   mandatory 60-month sentence as to Count 3.  The Count 3

24   sentence must run consecutive to any other sentence, including

25   the sentences in Counts 1 and 2.  I'm going as close to low

1    end as I feel comfortable going.  I think that two months just

2    takes into account a couple of factors.  One is I am fully

3    intending at this point to run the supervised release sentence

4    concurrent with this sentence.  And then second, just the -- I

5    think the lower end -- low end is the reasonable sentence,

6    sufficient but not greater than necessary to achieve the

7    statutory purposes of sentencing in this case; all right?

8         I'm not imposing a fine.  I find that Mr. Riggs does

9    not have the ability to pay a fine.  He is required to pay a

10   special assessment fee of $300, which is due immediately.

11   That's a hundred dollars for each of the three counts of

12   conviction.  I'm going to order you to be placed on supervised

13   release for a term of three years following his serving of

14   these sentences, each count to be served concurrently with

15   each other.  That's as to Counts 1, 2, and 3.

16        He must comply with the standard conditions of

17   supervised release and the following special conditions:  He

18   must cooperate in the collection of DNA; must not use or

19   possess alcohol; must not use or possess any narcotic or

20   controlled substance unless it's prescribed by a licensed

21   medical practitioner; must not go to or remain at any place

22   where he knows controlled substances are illegally sold, used,

23   distributed, or administered without first obtaining the

24   permission of the probation office; he must also participate

25   in a substance abuse intervention program under the terms --

1   under the administrative supervision of the probation office,

2   comply with the rules and requirements of the program, and

3   also contribute to the cost of the participation unless he

4   doesn't have the ability to do so.

5           I'm going to order he also participate in a mental

6   health treatment program, again under the administrative

7   supervision of the probation office, again contribute to the

8   cost of the treatment and follow the rules and requirements,

9   contribute to the cost of the treatment if the probation

10  office determines he is able to do so, and follow the rules

11  and requirements of the program.

12          Also, I'm going to order him to participate in a

13  cognitive behavioral treatment program, again under the

14  administrative supervision of the probation office, comply

15  with the rules and requirements of the program, contribute to

16  the cost of that participation.  And finally, due to the

17  nature of the offenses, he must submit his person, property,

18  house, residence, vehicle, office, papers, computers, and any

19  electronic communications or data storage devices or media to

20  a search conducted by the probation office when there is a

21  suspicion that the -- there's been a violation of the terms

22  and conditions of supervised release.  Obviously, the search

23  must be reasonable in time, place, and manner, and failure to

24  submit to the search may be grounds for revocation.

25          Are there any objections from any parties as to

1  findings of fact, the calculations, the sentence, or the

2  manner in which the sentence has been pronounced or imposed?

3       MR. FELTON:  Not from the Government.

4       MR. FORTUNE:  None from defendant, Your Honor.

5       THE COURT:  All right.  I'm going to go ahead and give

6  you your advice regarding your right to appeal this sentence,

7  and then we'll do the revocation hearing.

8       Mr. Riggs, you have the right to appeal the sentence I

9  just imposed within 14 days if you believe I've made some

10  error in sentencing you or in this case.  And as you know, in

11  your plea agreement you waived some, but not all, of your

12  rights to appeal your conviction sentence.  Those waivers are

13  generally enforceable.  What I would tell you to do, though,

14  is if you believe the waiver is unenforceable and wish to file

15  an appeal, file your appeal and just explain to the Court of

16  Appeals why you think the plea agreement doesn't bar the

17  appeal.  But remember, you have to do that within 14 days of

18  the judgment in your case.

19       If you can't afford the filing fee in which to take an

20  appeal, you can ask the Court to waive that by declaring you

21  in forma pauperis.  You can also ask the Court to appoint

22  counsel.  And if the Court does waive the filing fee and you

23  make a request through our clerk of courts, she will assist

24  you in preparing and filing a notice of appeal.  Do you

25  understand all of the rights I've just explained to you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Next we're going to take up --

3    you can have a seat, Mr. Riggs.  Thank you.  Next we're going

4    to take up the revocation hearing at 18-cr-99.  The Court has

5    been advised that the defendant has violated certain terms and

6    conditions of his supervised release.  I think the parties

7    have stipulated that that's the case, and I think in light of

8    the conviction that we've just adjudicated and sentenced on,

9    that's a basis for revocation itself.

10          Everybody agree with that?

11          MR. FELTON:  Yes, sir.  Yes, Your Honor.

12          THE COURT:  All right.  Mr. Fortune?

13          MR. FORTUNE:  Your Honor, we are willing to stipulate

14   that the terms of supervised release can be revoked.

15          THE COURT:  All right.  Who from the probation office

16   wants to just do a quick summary of the petition?  Would that

17   be you, Mr. Gregory?  I'll let you find your page.

18          PROBATION OFFICER GREGORY:  Good morning, Your Honor.

19   The petition was presented to the Court alleging several

20   allegations of noncompliance, violating condition number three

21   regarding unlawful criminal behavior.  Condition number four,

22   possession of a firearm is an allegation.  Condition number

23   five, unlawful possession of controlled substances or

24   paraphernalia, and condition number 14, not notifying the

25   probation office of law enforcement contact.  Those are the

1   allegations presented in the petition to the Court.

2          THE COURT:  All right.  And, Mr. Riggs, those are

3   admitted, sir; is that correct?

4          MR. FORTUNE:  Yes, Your Honor.

5          THE COURT:  All right.  And the Court finds that Mr.

6   Riggs was previously convicted of a Class C felony.  This is a

7   grade A violation.  His criminal history category at his

8   sentencing hearing in 18-cr-99 was a category II.  That

9   produces a guideline range of 15 to 21 months.  There's a

10  two-year statute of limitations that applies.

11         I'm going to ask Mr. -- anybody want to be heard on

12  this further in terms of what the Court should do?  I think

13  everyone understands the Court is going to impose a sentence

14  but run it concurrent to the previously adjudicated sentence

15  in 22-cr-47.  Anybody want to be heard on that, though?

16         MR. FORTUNE:  Your Honor, we would ask that the Court

17  enter an order that indicates that the term of -- even if it's

18  15 months of custodial sentence in 18-cr-99 be run concurrent

19  with Count 1 and 2 of case 22-cr-47.

20         THE COURT:  Yeah, it can't run concurrent to the Count

21  3 sentence.

22         MR. FORTUNE:  I under- -- yes, Your Honor.  And just

23  so that the record is clear, it's the intent of the Court that

24  a total, Mr. Riggs would serve a sentence of 108 months.

25         THE COURT:  That's the Court's intention, and I'll

1   clarify that.

2           MR. FORTUNE:  Thank you, Your Honor.

3           THE COURT:  Mr. Riggs, do you want to be heard, sir?

4           THE DEFENDANT:  No, sir.

5           THE COURT:  All right.  Mr. Felton, anything from you?

6           MR. FELTON:  No, sir.

7           THE COURT:  All right.  I am going to impose a

8   15-month sentence on the revocation.  I'm sorry, Mr. Riggs, if

9   you could stand.  I usually have folks stand when I pronounce

10  a sentence.  And I realize that's a formality, but I think

11  it's important.

12          I'm going to impose a 15-month sentence but I'm going

13  to run it concurrent with Counts 1 and 2 of your sentence in

14  21-cr-47.  So the Court's intention is that the total time you

15  will receive on all these cases -- 18-cr-99, the revocation,

16  and 22-cr-47, the current case -- will be 108 months.  That is

17  48 months as to Counts 1 and 2 of 22-cr-47, 15 months as to

18  the revocation in 18-cr-99, to run concurrent with each other,

19  and then a consecutive 60-month sentence as to Count 3 in

20  22-cr-47.

21          I am going to waive your prison cost-of-incarceration

22  fee.  I find, Mr. Riggs, that you don't have the ability to

23  pay that.  And I take it no paper to follow in this case

24  because there will be supervised release in 22-cr-47, so

25  there's no reason to have additional supervised release in

1    18-cr-99.

2          PROBATION OFFICER GREGORY:  Yes, Your Honor.  Thank

3    you very much.

4          THE COURT:  All right.  Any -- Counsel, Mr. Riggs,

5    anyone want to have any further comment on that?

6          MR. FELTON:  Not from the Government.

7          MR. FORTUNE:  No, Your Honor.

8          THE COURT:  Mr. Riggs, do you understand the sentence,

9    sir?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  And you have the right to appeal

12    that sentence I just imposed within 14 days if you believe

13    that I've made some error in the sentence in the revocation

14    case.  Do you understand that?

15          THE DEFENDANT:  Yeah.

16          THE COURT:  Okay.  I am going to -- is there any -- I

17    know I need to enter a forfeiture.  The Government's going to

18    -- has already submitted a preliminary order of forfeiture,

19    and I guess I'll get a final order of forfeiture.

20          MR. FELTON:  Yes, sir.

21          THE COURT:  I'll do the preliminary order of

22    forfeiture.  Is there any restitution issue in either one of

23    these cases?  I don't think there is.

24          MR. FELTON:  No, sir, there's not.

25          THE COURT:  All right.

1      MR. FORTUNE:  Your Honor, for the record, my client

2   does not have any objection to the forfeiture in 22-cr-47 as

3   to the firearms as it relates to Counts 1, 2, 4, that Count 4

4   -- hat even though Count 4 is being dismissed, he has no

5   objection to that forfeiture.

6      THE COURT:  All right.  Very well.  All right.  I

7   think we've accomplished what we assembled to do today.  Mr.

8   Riggs, I do wish you well.  I'm not kidding when I say that.

9   You might think it's funny but it's not a --

10      THE DEFENDANT:  No.  I'm just smiling.  I'm good.

11      THE COURT:  All right.  But I do wish you well.

12      Anything further from the Government?

13      MR. FELTON:  No, Your Honor.

14      THE COURT:  Anything further from you, Mr. Fortune?

15      MR. FORTUNE:  No, Your Honor.

16      THE COURT:  All right.  We'll be adjourned.

17      (Adjourned accordingly at 9:49 a.m.)

18

19

20

21

22

23

24

25

1                       C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5                            Dated: January 13, 2023

6

7

8    *Pamela G. Weyant*
     Pamela G. Weyant, RDR, CRR, CCR
9    Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25