## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| **ANTUAN CORNELL RIGGS,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:23-cv-8030-RDP** |
| | ) | **(2:22-cr-0047-RDP-JHE)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

### <u>UNITED STATES' OPPOSITION AND RESPONSE TO</u>
### <u>MOTION FILED PURSUANT TO 28 U.S.C. §2255</u>

The United States hereby opposes and responds to Petitioner Antuan Cornell
Riggs's motion pursuant to 18 U.S.C. § 2255 to vacate, set aside, or correct his
sentence. Riggs claims (1) his conviction resulted from an unconstitutional
prosecution under 18 U.S.C. § 922(g)(1), (2) his counsel was ineffective for failing
to object at sentencing to the statutory ratio of methamphetamine to
methamphetamine mixture, and (3) the disparity between different manifestations of
methamphetamine violated his substantive due process rights.

Riggs's constitutionally-based first and third claims are procedurally
defaulted because Riggs waived them in his plea agreement. Further, Eleventh
Circuit caselaw disposes of his first claim on the merits, and the second and third
claims fail for lack of a supporting factual basis. As grounds for its opposition, the
Government provides the following:

# I.     Statement of the Case

## Prior Felony Conviction

On September 11, 2018, in the Northern District of Alabama, this Court entered a judgment against Riggs for wire fraud.  *U.S. v. Riggs*, 2:18-CR-99-RDP-JEO, Northern District of Alabama.

## Indictments and Factual Basis for the Plea

In February 2022, a Northern District grand jury indicted Riggs for the February 3, 2019 conduct of being a felon in possession of two firearms (Count One), possession of controlled substances with the intent to distribute (Count Two), and carrying a firearm during a drug trafficking offense (Count Three).  (Crim. Doc. 1, U.S. v. Riggs, 2:22-cr-0047-RDP-JHE, No. Dist. of Ala.)  Soon after, the same grand jury added a fourth count asserting a second violation of 18 U.S.C. § 922(g)(1) based on Riggs's possession of a firearm on February 1, 2022.  (Crim. Doc. 15.)

The factual basis in the Plea Agreement described the February 3, 2019 events.  A Birmingham officer responding to a suspicious vehicle behind an abandoned house encountered Riggs sitting in his vehicle and saw him throw a gun into the floor.  The officer smelled marijuana when he opened the driver's door.  He handcuffed Riggs and later searched the vehicle.  He recovered the pistol thrown to the floor and a second pistol stuffed next to the seat.  He found a gallon-size bag and three quart-size bags filled with marijuana.  He also recovered over 26 pills, some

of which tested as hydrocodone and others tested as ecstasy and methamphetamine. He seized a total of $11,897 in cash from Riggs's person and from the vehicle. (Crim. Doc. 39, pp. 5-9.)

## The Plea Agreement and Its Waivers

On July 25, 2022, pursuant to a signed plea agreement, Riggs pled guilty to the first three counts of the superseding indictment in exchange for the Government's agreement to move for the dismissal of Count Four at sentencing and recommend concurrent sentences within the guidelines range for Counts One and Two. (Crim. Doc. 62,[1] p. 12; Crim. Doc. 39, p. 1.) Section IV of Riggs's plea agreement contained a limited statute of limitations waiver, a waiver of the right to appeal his conviction and sentence, and a waiver of post-conviction challenges as set out below.

### B. RIGHT TO APPEAL AND POST-CONVICTION RELIEF

**In consideration of the recommended disposition of this case, I, ANTUAN CORNELL RIGGS, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the**

---

[1] The cm/ecf docket for Riggs's criminal case label Doc. 62 as "Transcript-Appeal." However, the document stored as Doc. 62 is the Plea Transcript. Though not attached hereto as an exhibit, the Government is sending a copy of the Plea Transcript to Petitioner along with his service copy of this filing.

statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

(a)    Any sentence imposed in excess of the applicable statutory maximum sentence(s);

(b)    Any sentence imposed in excess of the guideline sentencing range determined by the Court at the time sentence is imposed; and

(c)    Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

(Crim. Doc. 39, pp. 10-12.)

Riggs placed his signature at the end of Section IV, acknowledging that he fully understood those waivers and that he knowingly and voluntarily entered into the waivers. (*Id.*) At the July 25, 2022 plea hearing, this Court reviewed with Riggs Section IV and confirmed that he understood the waivers and that only three exceptions to the waivers existed. (Crim. Doc. 62, pp. 16-17.) Of the three exceptions to the waiver of appeal and post-conviction litigation, only the last one – ineffective assistance of counsel – is relevant to Riggs's § 2255 filing. (Crim. Doc. 39, pp. 10-12.)

II. **Riggs's plea agreement waivers prevent him from raising his constitutional claims.**

A. **Riggs's waived his right to raise a constitutional challenge to the application of 18 U.S.C. § 922(g)(1) to his conduct.**

Riggs claims that his constitutional rights were violated by his prosecution for violating 18 U.S.C. § 922(g)(1) for possessing a firearm after being convicted of a non-violent felony. (Civ. Doc. 2, p. 6.) However, Riggs's plea agreement states that he waives and gives up his "right to appeal [his] conviction and/or sentence . . . [and] . . .the right to challenge [his] conviction and/or sentence . . . in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which [he was] pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s)." (Crim. Doc. 39, pp. 10-11.)

At his plea, Riggs pled guilty to being a felon and possessing two guns. Now he makes a § 2255 claim that is an amalgam of two arguments specifically waived in his plea agreement – that § 922(g)(1) is unconstitutional as applied to his conduct. Because Riggs' claim squarely violates his agreement, he is barred from asserting it.

Riggs' claim is procedurally defaulted because he did not object to his sentence, did not appeal, and agreed to the waivers applicable to his claims.

**B. Riggs also waived his third claim that application of the 10 to 1 methamphetamine ratio deprived him of substantive due process.**

Riggs' waivers discussed above also apply to the third claim, asserted in his Memorandum, that he was deprived of substantive due process by the application of the 10 to 1 methamphetamine ratio. That claim also is due to be denied as procedurally defaulted.

**C. Eleventh Circuit procedural default case law supports the denial of Riggs's collateral challenge to his prosecution under 18 U.S.C. § 2255.**

Eleventh Circuit case law supports denial of Riggs's first and third claims based on the waivers in his plea agreement. The Eleventh Circuit has explained that "plea agreements must be understood to mean what their signatories intended." *King v. U.S.*, 41 F.4th 1363, 1368 (11th Cir. 2022). "Even when a new constitutional rule might provide a strong basis for collateral attack, [the Eleventh Circuit] enforce[s] an appeal waiver according to its terms." *King*, 41 F.4th at 1367. There are exceptions to enforcement, "[b]ut those subjects are few and sharply defined." *Id.*, *quoting U.S. v. Bushert*, 997 F.2d 1343, 1350 at n. 17 (11th Cir. 1993). The *King* court identified those exceptions as a jurisdictional defect, a constitutionally impermissible factor in sentencing ("such as race"), and a sentence in excess of the statutory maximum. *King*, 41 F.4th at 1367.

The three exceptions identified in *King* are not present here. There is no jurisdictional defect alleged or present. Nor is there an allegation of a

constitutionally impermissible factor in sentencing or a sentence in excess of the statutory maximum. There merely is an agreement between the parties to resolve a criminal proceeding, with one of the parties wishing to breach it. In this case, that effort should be denied.

## III. Riggs's Substantive Claims and the United States' Response to Each

Riggs's § 2255 Motion and Memorandum make a total of three substantive claims: (1) 18 U.S.C. §922(g)(1) is unconstitutional as applied to him; (2) he was denied effective assistance of counsel when his appointed attorney failed to object to the 10:1 ratio increase applied to methamphetamine; and, in the Memorandum only, (3) application of the 10:1 ratio violated Petitioner's right to substantive due process of law. (Civ. Doc. 1, pp. 4-5; Civ. Doc. 2, p. 6.) Claim 1 is the most involved and discussed immediately below. Claims 2 and 3 are addressed further below in one response because they lack a factual basis and are resolved quickly with the same factual information.

### A. The Eleventh Circuit's opinion in *U.S. v. Rozier* controls Riggs's claim that 18 U.S.C. §922(g)(1) was unconstitutionally applied.

This circuit's precedent in *U.S. v. Rozier*, 598 F.3d 768 (11th Cir. 2010), forecloses Riggs's claim that application of 18 U.S.C. § 922(g)(1) to him is a violation of his Second Amendment right to possess a firearm. *Rozier* upheld § 922(g)(1) against a Second Amendment challenge, and *Rozier* remains binding

precedent because it was not overruled or abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

Even if *Rozier* didn't exist, Riggs's argument would fail under *Bruen* because the Second Amendment's text, construed in its historical context, shows that it does not preclude felons from being prohibited from possessing firearms. The Second Amendment codified a pre-existing right whose history shows that felons (and certain other categories) may be barred from possessing arms. That's consistent with the Supreme Court's repeated statements defining the Second Amendment right as belonging only to "law-abiding" citizens, which necessarily excludes convicted felons. Moreover, § 922(g)(1) follows the nation's historical regulation of firearms.

When the Second Amendment was adopted, felons were regularly subject to severe penalties, including death and estate forfeiture. Colonial and state legislatures possessed the power to disarm citizens deemed untrustworthy or outside the political community, such as those who refused to take loyalty oaths. Those historical regulations confirm that § 922(g)(1) does not violate the Second Amendment. For all of these reasons, this Court should deny Defendant's claim that prosecuting him under § 922(g)(1) using his prior conviction of money laundering was unconstitutional.

**1. The Eleventh Circuit's Rozier decision is binding precedent and forecloses Riggs's Second Amendment challenge to § 922(g)(1).**

In *Rozier*, the Eleventh Circuit upheld the constitutionality of § 922(g)(1) based on *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). *Bruen* neither overruled nor abrogated *Heller*. *Rozier* therefore binds this court and forecloses Riggs's Second Amendment challenge. This Court should deny the § 2255 Motion.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. In *Heller*, the Supreme Court held that the Second Amendment guarantees "the right of law-abiding, responsible citizens" to keep a handgun in the home for self-defense. 554 U.S. at 635. The Court based its holding on a "textual analysis" of the Second Amendment, looking to the Amendment's "historical background," because the text shows that it "codified a *pre-existing* right." *Id.* at 578, 592; *see also Id.* at 603 (describing the Second Amendment as "a text that was widely understood to codify a pre-existing right, rather than to fashion a new one").

Based on "the historical understanding of the scope of th[at] [pre-existing] right," *Id.* at 625, *Heller* recognized that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. The Court announced, therefore, that "*nothing in [its] opinion should be taken to cast doubt*" on certain "*presumptively lawful regulatory measures,*" such as "*longstanding prohibitions on the possession*

*of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27 & n.26 (emphasis added). So *Heller* conditioned its holding—that Heller must be allowed to carry a handgun at home—on the assumption that Heller "is not disqualified from the exercise of Second Amendment rights." *Id.* at 635; *see also Id.* at 631 (suggesting that one is "disqualified" if he is "a felon" or "insane").

In the wake of *Heller,* the Eleventh Circuit decided *Rozier,* holding that section 922(g)(1) does not violate the Second Amendment. 598 F.3d at 770–71. In doing so, the Court recognized that the Second Amendment right is "'not unlimited'" and that certain classes of people may be "'disqualified from the exercise of Second Amendment rights.'" *Rozier*, 598 F.3d at 770–71 (quoting *Heller*, 554 U.S. at 626, 635). Indeed, "the first question to be asked … is whether one is *qualified* to possess a firearm." *Rozier*, 598 F.3d at 771 (emphasis the Court's). The Court answered that question, noting that a felon—unlike a "law-abiding" citizen—falls within a class of people who may be disqualified from exercising Second Amendment rights. *Rozier*, 598 F.3d at 770–71. The Court focused on *Heller*'s recognition "that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id*. The Court explained that principle's importance:

"First, to the extent that this portion of *Heller* limits the Court's opinion to the possession of firearms by *law-abiding* and *qualified* individuals, it is not dicta. Second, to the extent that this statement is superfluous to the central holding of *Heller*, we shall still give it considerable weight."

*Rozier*, 598 F.3d at 771 n.6 (citations omitted).

This Court is bound to follow *Rozier*. *See In re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) ("courts of this circuit are bound by the precedent of this circuit"). *Rozier* binds this Court "until it is overruled or undermined to the point of abrogation by the Supreme Court or by [the Eleventh Circuit] sitting en banc." *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Any intervening Supreme Court decision must be "clearly on point" and must actually abrogate or directly conflict with, not merely weaken, the Eleventh Circuit holding. *United States v. Dudley*, 5 F.4th 1249, 1265 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1376 (2022).

## 2. *Bruen* does not undermine *Rozier*.

*Bruen* does not come close to abrogating or directly conflicting with *Rozier*. It does not address the constitutionality of § 922(g)(1), it does not repudiate the *Heller* analysis employed in *Rozier*, and it repeatedly reaffirms the validity of limiting the Second Amendment's reach to law-abiding people.

Other circuit courts agree that *Bruen* doesn't overrule or abrogate their precedent upholding § 922(g)(1) in the face of Second Amendment challenges. *See, e.g.*, *United States v. Sitladeen*, 64 F.4th 978, 985 (8th Cir. 2023) ("*Bruen* 'decide[d] nothing about who may lawfully possess a firearm.'") (quoting *Bruen*, 142 S. Ct. at

2157 (Alito, J., concurring)); *Vincent v. Garland*, 80 F.4th 1197, 1201–02 (10th Cir. 2023) (reaffirming pre-*Bruen* precedent upholding section 922(g)(1), explaining that *Bruen* "didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons," noting that six justices pointed out that *Bruen* was not casting any doubt on that principle, and recognizing that *Bruen* approved of "shall-issue" licensing regimes, which often require a background check to ensure that the applicant is a "law-abiding, responsible citizen[]"). This Court should do the same.

*Bruen* held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self defense outside the home." 142 S. Ct. at 2122. The Supreme Court struck down a New York law that required residents to demonstrate "proper cause" to obtain a license to carry a handgun outside the home because that law "prevent[ed] law abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. at 2122, 2156. *Bruen* also dispensed with the "two-step" framework adopted by most courts of appeal after *Heller* because the second step of that framework inappropriately applied "means-end scrutiny." *Bruen*, 142 S. Ct. at 2125–27. However, *Bruen* does not even address—let alone decide—the constitutionality of § 922(g)(1).

*Bruen* "reiterate[d]" the *Heller* "standard for applying the Second Amendment," *id.* at 2129, which is the standard that *Rozier* expressly employed.

*Bruen* observed that its framework "is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen,* 142 S. Ct. at 2127. First, "[i]n keeping with *Heller*, … when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2129–30. Second, if a challenged regulation burdens such presumptively protected conduct, the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130.

   *Bruen* disapproved of the second step (means-end scrutiny) applied by some lower courts, finding the two-step approach is "one step too many." *Bruen*, 142 S. Ct. at 2127. But the *Rozier* Court did not engage in step-two, means-end scrutiny. The Eleventh Circuit did not even acknowledge the two-step inquiry until two years after *Rozier. See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012). And even in the decade since then, the Eleventh Circuit has "never applied means-ends scrutiny in a published decision analyzing a Second Amendment challenge." *U.S. v. Jimenez-Shilon*, 34 F.4th 1042, 1052 (11th Cir. 2022) (Newsom, J., concurring). Instead, the inquiry has always ended at step one—where the question is whether "'the restricted activity is protected by the Second Amendment in the first place'" because "the challenged regulation does not burden conduct within the scope of the Second Amendment as historically understood." *U.S. v.*

*Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017) (quoting *GeorgiaCarry.Org*, 687 F.3d at 1260 n.34). So *Bruen*'s rejection of step two does not affect *Rozier*'s precedential value. *Cf. Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023) (overruling pre-*Bruen* precedent that had upheld section 922(g)(1) "under the means-end inquiry").

Indeed, *Bruen* cites with approval the Eleventh Circuit's *Focia* decision, quoted above, because it "ascertain[ed] the original scope of the right based on its historical meaning." *Bruen*, 142 S. Ct. at 2126. In *Focia*, this Court did for 18 U.S.C. § 922(a)(5) just what it had done for section 922(g)(1) in *Rozier*: It relied on *Heller* and held that section 922(a)(5) (which prohibits certain transfers to out-of-state persons) is one of the "'presumptively lawful regulatory measures' that have historically constrained the scope of the right." *Focia*, 869 F.3d at 1285 (quoting *Heller*, 554 U.S. at 626–27 & n.26). So *Bruen* not only doesn't abrogate the *Heller* step-one analysis employed in *Rozier*; it validates *Rozier*'s reliance on *Heller*, including its application of the Second Amendment only to "law-abiding" citizens and its recognition that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful," *Heller*, 554 U.S. at 626–27 & n.26. *See Rozier*, 598 F.3d at 770–71 & n.6.

*Bruen* also endorsed the constitutionality of various "shall-issue" licensing regimes, *id.* at 2138 n.9, many of which prohibit issuing licenses to felons. *Bruen* explains that a shall-issue regime, "which often require applicants to undergo a

background check," generally pass constitutional muster because they "are designed to ensure only that those bearing arms … are, in fact, 'law-abiding, responsible citizens.'" *Id*. at 2138 n.9 (quoting *Heller*, 554 U.S. at 635).

Furthermore, *Bruen* repeatedly echoes *Heller*'s description of the Second Amendment right as belonging to "law-abiding" citizens. *Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133–34, 2135 n.8, 2138 & n.9, 2150, 2156. And, beyond the majority opinion, several Justices separately confirmed that *Bruen* does not upend *Heller*'s treatment of these longstanding, presumptively lawful measures. Justice Alito, for example, explained that *Bruen* does not "disturb" what *Heller* said "about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring). Justice Kavanaugh, joined by Chief Justice Roberts, emphasized that "the Second Amendment allows a 'variety' of gun regulations" and reiterated *Heller*'s statement about not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," which are among a non-exhaustive list of "presumptively lawful regulatory measures." *Id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J.). And the dissenting opinion, too, recognizes that *Bruen* "cast[s] no doubt" on *Heller*'s treatment of "prohibitions on the possession of firearms by felons" as "presumptively lawful." *Bruen*, 142 S. Ct. at 2189–90 (Breyer, J.,

dissenting, joined by Sotomayer and Kagan, JJ.). So in *Bruen* itself, the justices reiterated the validity of restrictions on firearm possession by felons, the very conclusion the Eleventh Circuit reached in *Rozier*.

In sum, nothing about *Bruen* abrogates the Eleventh Circuit's longstanding, binding precedent upholding § 922(g)(1) as constitutional under the Second Amendment. *Rozier*, therefore, compels the denial of Riggs's § 2255 motion.

**B.    Even setting *Rozier* aside, the Second Amendment's text, construed in its historical context, does not protect the possession of firearms by convicted felons.**

Even if this Court weren't bound by *Rozier*, the § 2255 motion would be meritless. The Supreme Court explained in *Heller*, and confirmed in *Bruen*, that the Second Amendment's text "codified *a pre-existing* right," neither ''granted by the Constitution'' nor "dependent upon that instrument for its existence." *Heller*, 554 U.S. at 592 (emphasis the Court's) (quoting *United States v. Cruikshank*, 92 U.S. 542, 553 (1876)); *Bruen*, 142 S. Ct. at 2135. Thus, the right to bear arms is "enshrined with the scope [it was] understood to have when the people adopted [it]." *Heller,* 554 U.S. at 634–35. Two independent aspects of the Second Amendment's text, as informed by history, show that the Second Amendment does not encompass a right to possess firearms by people who have shown disregard for the law by committing felony offenses.

First, convicted felons fall outside "the people" protected by the Second Amendment, a term that *Heller* said refers to "members of the political community." 554 U.S. at 580. Legislatures have historically had wide latitude to exclude felons from the political community. As Thomas Cooley explained in his "massively popular 1868 Treatise on Constitutional Limitations," *id.* at 616, "the *people* in whom is vested the sovereignty of the State … cannot include the whole population," and "[c]ertain classes have been almost universally excluded"—including "the idiot, the lunatic, and the felon, on obvious grounds," Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 28–29 (1st ed. 1868). Felons therefore could historically be excluded from "exercis[ing] the elective franchise," *id.* at 29, as well as from other, closely related "political rights"—including the right to "hold public office," the right to "serve on juries," and, most relevant here, "the right to bear arms." Akhil Reed Amar, *The Bill of Rights* 48 (1998) (explaining that these rights were historically understood as "political rights" and that "arms bearing and suffrage were intimately linked [in the late-18th century] and have remained so").

Today it remains the case that the commission of a felony often results in the "forfeiture of a number of rights" tied to membership in the political community, including not just the right to bear arms but also "the right to serve on a jury and the fundamental right to vote." *Medina v. Whitaker*, 913 F.3d 152, 155 (D.C. Cir. 2019)

(citing 28 U.S.C. § 1865(b)(5) and *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974));

*see also Spencer v. Kemna*, 523 U.S. 1, 8–9 (1998) (noting that consequences of a

felony conviction can include deprivation of the right to hold office).

The term "people" need not bear precisely the same meaning in the Second

Amendment that it does in the First and Fourth Amendments. The latter provisions

protect even those who have been excluded from "the political community" due to

felony convictions. *Heller*, 554 U.S. at 580. But *Heller* shows that people who are

protected by some Bill of Rights provisions—such as "felons and the mentally ill,"

*id*. at 626—still may be disqualified from the exercise of Second Amendment rights.

Second, regardless of whether felons fall within "the people," the Second

Amendment's right "to keep and bear arms" has never been understood to prevent

the disarming of felons. As the Eleventh Circuit recently explained, "being a member

of 'the people' to whom the Second Amendment applies as a general matter is a

*necessary* condition to enjoyment of the right to keep and bear arms, but it is not

alone *sufficient*." *U.S. v. Jimenez-Shilon*, 34 F.4th 1042, 1044 (11th Cir. 2022)

(emphases the Court's). That's because "the Second Amendment's text shows that

it codified … a pre-existing right—the right to keep and bear Arms—and that right's

particular history demonstrates that it extended (and thus extends) to some categories

of individuals, but not others." *Id.* (citation and internal quotation marks omitted);

*see also Heller*, 554 U.S. at 592, 603; *id.* at 599 (explaining "the historical reality

that the Second Amendment was not intended to lay down a novel principle but rather codified a right inherited from our English ancestors"). Therefore, a convicted felon "is not a law-abiding citizen, and history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society." *United States v. Jackson*, 69 F.4th 495, 504 (8th Cir. 2023).

C.   **Riggs's as-applied challenge fails because there is no Second Amendment exemption from § 922(g)(1) based on the nature of his crime or his individual circumstances.**

To uphold § 922(g)(1), this Court need only recognize that Congress may disarm individuals who have been convicted of crimes that satisfy the common definition of a felony—that is, crimes punishable by imprisonment for more than one year.  The Eighth Circuit in *Jackson* noted that the *Heller* court cautioned that nothing in *Heller* "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Jackson*, 69 F.4th 495, 501, *quoting Heller*, 554 U.S. at 626.  Consequently, "[g]iven the[] assurances by the Supreme Court [in *Heller*], and the history that supports them, [this Court should] conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Jackson*, 69 F.4th at 502; *see also Vincent*, 80 F.4th at 1202 (relying on precedent upholding § 922(g)(1) and stating "we have no basis to draw constitutional distinctions based on the type of felony involved").

In interpreting other provisions of the Bill of Rights that require distinctions among different types of crimes, the Supreme Court has traditionally focused not on "the particularities of an individual case," but on the "maximum authorized penalty"—which "provides an 'objective indication of the seriousness with which society regards the offense.'" *Lewis v. United States*, 518 U.S. 322, 328 (1996) (brackets and citation omitted). For example, the Grand Jury Clause applies only to "capital" or "infamous" crimes, U.S. Const. Amend. V, and a crime is "infamous" if it is punishable by "imprisonment for more than a year," *Branzburg v. Hayes*, 408 U.S. 665, 687 n.24 (1972) (citation omitted). The Sixth Amendment jury-trial right similarly does not extend to petty offenses, and an offense is petty if it is punishable by a prison term of six months or less. *See Blanton v. City of N. Las Vegas*, 489 U.S. 538, 541–545 (1989). This Court should follow a similar approach in interpreting the Second Amendment, which is subject to the same "body of rules" as "the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (citation omitted). In particular, when a person has been convicted of a crime punishable by more than one year of imprisonment, a court need not inquire further into the nature of the crime in order to determine whether disarmament is justified. Rather, the maximum authorized penalty for the offense by itself establishes that the crime is serious enough to support disarmament. *See Medina*, 913 F.3d at 160–161.

A regime of individualized as-applied challenges to section 922(g)(1) would be unsound in principle and unworkable in practice. For one, it would distort the separation of powers. In our constitutional system, the Legislative Branch traditionally determines the consequences of criminal convictions—not only the punishment, but also the collateral consequences, such as disfranchisement, disqualification from jury duty, ineligibility for public benefits, sex-offender registration, and disarmament. The Executive Branch, in turn, traditionally grants clemency if it determines that the punishment or the collateral consequences prescribed by law do not fit a particular offender's circumstances. If federal courts were to create a system of case-by-case, as-applied exemptions from § 922(g)(1), they would in effect usurp the Executive Branch's role of deciding when to make "exceptions" to the "rigor" and "severity" of the "criminal code" enacted by Congress. The Federalist No. 74, at 501 (Alexander Hamilton) (Jacob E. Cooke ed. 1961).

A regime of individualized as-applied challenges would also treat the right to possess arms differently from other rights that criminals forfeit upon conviction. As discussed above, States have long denied felons the right to vote, the right to serve on juries, and the right to hold public office. The Supreme Court has never suggested that a felon can challenge those disabilities on the ground that they do not fit his felony or his circumstances. This Court should not treat the right to possess firearms

any differently and begin the carve out of felonies to which § 922(g)(1) does not apply.

A regime of individualized as-applied challenges to § 922(g)(1) would, moreover, pose serious problems of judicial administration. There is no workable test for identifying—for the courts but also for convicted felons—the offense-specific applications of section 922(g)(1) that would violate the Second Amendment. Even *Range*—which upheld an as-applied challenge—did not even try to craft a test, instead ruling that section 922(g)(1) violates the Constitution as applied to "people like Range." 69 F.4th at 106. (And, as mentioned above, the United States has filed a certiorari petition asking the Supreme Court to reverse *Range*. 2023 WL 6623648.)

Any suggestion that Congress may disarm only "dangerous" felons would be too amorphous a standard to succeed. Congress tried a variant of that approach. Until 1992, felons could obtain relief from § 922(g)(1) by demonstrating to ATF that they would "not be likely to act in a manner dangerous to public safety." 18 U.S.C. § 925(c). However, Congress found that program unworkable and abandoned it. A congressional report explained that judging whether applicants posed "a danger to public safety" was "a very difficult and subjective task" that "could have devastating consequences for innocent citizens if the wrong decision is made." S. Rep. No. 353, 102d Cong., 2d Sess. 19, 20 (1992). Another report explained that "too many … felons whose gun ownership rights were restored went on to commit crimes with

firearms." H.R. Rep. No. 183, 104th Cong., 1st Sess. 15 (1996). Leaving this endeavor to the courts would, if anything, be even less feasible than the system of administrative relief that Congress tried and abandoned. Unlike an administrative agency, courts "possess neither the resources to conduct the requisite investigations nor the expertise to predict accurately which felons may carry guns without threatening the public's safety." *Pontarelli v. United States Dep't of the Treasury*, 285 F.3d 216, 231 (3d Cir. 2002) (en banc).

**D.    The 10:1 statutory ratio of methamphetamine mixture to methamphetamine was not a factor in Riggs's sentencing and consequently, could not have constituted a substantive due process violation.**

Riggs's claims regarding the statutory methamphetamine differential and a substantive due process violation have no applicability to the facts of his case.  It is true that 21 U.S.C. § 841 contains differential treatment of certain levels of methamphetamine weights depending on whether the methamphetamine is pure or mixed with an additive.   *See* 21 U.S.C. § 841(a)(1), (b)(1)(A) and (b)(1)(B).  However, in this case, the grand jury charged, Riggs pled guilty to, and the Court sentenced Riggs under 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Subsection (b)(1)(C) makes no punishment distinction between methamphetamine and a mixture containing methamphetamine.   Moreover, though Riggs's presentence report references Count Two and methamphetamine, nowhere in the report does it discuss methamphetamine factoring into the calculation of his sentencing guidelines.  (Crim.

Doc. 42.)[2]  Thus, the methamphetamine in this case played no role in Riggs's sentencing.[3]  Therefore, his attorney as a matter of law could not have been ineffective when he did not assert an objection to the PSR calculations.

## IV.  Conclusion

The Government asks the Court to deny Riggs's § 2255 Motion due to the waivers of the first and second claims and the meritless nature of the third claim.

Respectfully submitted this the 3rd day of November 2023.

> PRIM F. ESCALONA
> United States Attorney
>
> */s/  Alan Baty*
> ALAN BATY
> Assistant United States Attorney

ADDRESS OF COUNSEL:

United States Attorney's Office
1801 Fourth Avenue North
Birmingham, AL 35203

---

[2] The assertion of the baseless methamphetamine claim is explained by this disclosure in Riggs's Memorandum: "'Assuming – as the assisting paralegal does not have access to the PSR, pursuant to BOP regulations – that the sentence imposed was grounded in the drug amount, applying the 10:1 ratio between "actual meth" and a "mixture containing meth," the Defendant was denied Effective Assistance of Counsel, when Counsel failed to object to such application." (Civ. Doc. 2.)
[3] The Government reviewed the PSR with a probation office supervisor to confirm that methamphetamine in any form was not a factor in calculating Riggs's guidelines.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing response and plea transcript will be served by placing same into the U.S. Mail on November 6, 2023, postage prepaid and addressed to Defendant/Petitioner at the following address:

Antuan Cornell Riggs, Reg. No. 35846-001
FCI Edgefield
501 Gary Hill Rd.
Edgefield, SC  29824

*/s/  Alan Baty*
Alan Baty
Assistant United States Attorney